Phillip Daman (MA SBN 681040)
Email: phillip.daman@Damanllp.com
Andre St. Laurent (CA SBN 234809)
Email: andre.stlaurent@Damanllp.com
Jeffrey Daman (PA SBN 86059)
Email: jeffrey.daman@Damanllp.com
Daman and Associates, LLP
1455 Pennsylvania Ave, NW, Suite 400
Washington, DC. 20004
Telephone: 202.660.1447
Fax: 424.645.0754

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOST ART LIQUIDS, LLC<br><br>Plaintiff,<br><br>v.<br><br>FOOD AND DRUG ADMINISTRATION, SCOTT GOTTLIEB, M.D., in his official capacity as Commissioner of Food and Drugs, and ERIC HARGAN, in his official capacity as Secretary of Health and Human Services,[1]<br><br>Defendants. | No. 2:16-cv-03468-SJO-FFM<br><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF ADMINISTRATIVE RECORD**<br><br>Date: December 11, 2017<br>Time: 10:00 a.m.<br>Courtroom: 10-C<br><br>Hon. S. James Otero |

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Eric Hargan and Dr. Scott Gottlieb are substituted for their predecessors in their respective offices.

# TABLE OF CONTENTS

I. INTRODUCTION. ...................................................................................................1

II. BACKGROUND ....................................................................................................4

III. ARGUMENT .........................................................................................................6

    A.    Defendants are Required to Produce the Full Administrative Record. ................6

    B.    Defendants Have no Justification for Redaction of the Record or Requiring a Protective Order. ..............................................................................................8

    C.    Defendants cannot establish Good Cause for a Protective Order. .....................10

    D.    The Privacy Act does not Prevent FDA from Producing the Record. ...............11

        1.    The Privacy Act is not Applicable.................................................................12

        2.    There is no Privacy Interest. ..........................................................................12

        3.    Even if There Were a Privacy Interest, the Privacy Act is Not a Legal Basis for Withholding the Full AR. ............................................................................12

            a.    Documents can be Produced under the Privacy Act Pursuant to Court Order. ..............................................................................................................13

            b.    Documents can be Produced under the Privacy Act Pursuant to a Freedom of Information Act ("FOIA") Request. ..................................................13

            c.    Documents can be Produced Under the Privacy Act Based on Routine Use. ........................................................................................................14

    E.    Plaintiff is Harmed by not Having the Full Administrative Record....................14

IV. CONCLUSION....................................................................................................16

# TABLE OF AUTHORITES

**Cases**

*Ammex, Inc. v. United States*, 62 F. Supp.2d 1148 (Ct. Int'l Trade 1999) .................9, 10

Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470 (9th Cir.1992) ................................16

*Bennett v. Spear,* 520 U.S. 154 (1997)..............................................................................8

Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971) .......................3, 9

Clairton Sportsmen's Club v. Pennsylvania Turnpike Commission, 882 F. Supp. 455 (W.D.Pa.1995) ....................................................................................................9

*Deford v. Schmid Prods. Co.*, 120 F.R.D. 648 (D. Md. 1987)....................................15, 16

*Foltz v. State Farm Mut. Auto. Ins. Co*., 331 F. 3d 1122 (9th Cir. 2003)....................15, 16

*Ford Motor Co. v. United States*, 825 F. Supp. 1083 (Ct. Int'l Trade 1993) ..................19

*Friends of the Earth v. Hintz*, 800 F.2d 822 (9th Cir. 1986) .............................................9

*Laxalt v. McClatchy*, 809 F.2d 885 (D.C. Cir. 1987).......................................................19

Miami Nation of Indians of Indiana v. Babbitt, 979 F. Supp. 771 (N.D. Ind. 1996) ....9, 10

*News-Press v. DHS*, 489 F.3d 1173 (11th Cir. 2007) .....................................................20

*Phillips v. General Motors*, 307 F.3d 1206 (9th Cir. 2002).........................................15, 16

Portland Audubon Soc'y v. Endangered Species Comm., 984 F.2d 1534 (9th Cir. 1993)..9

*SEC v. Gowrish*, No. C 09-05883, 2010 WL 1929498 (N.D. Cal. May 12, 2010) ...........19

*Thompson v. U.S. Dep't of Labor*, 885 F.2d 551 (9th Cir. 1989).........................................9

**Other Authorities**

120 Cong. Rec. 36,967 (1974) .......................................................................................19

**Rules**

Fed. R. Civ. P. 26(b)(1).................................................................................................19

Fed. R. Civ. P. 26(c) ................................................................................................15, 16

**Regulations**

21 C.F.R §1140 ................................................................................................................1

21 C.F.R. §1100 ...............................................................................................................1

21 C.F.R. §1143 ...............................................................................................................1

Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Restrictions on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products, 81 Fed. Reg. 28,973 .............................. 1

**Federal Statutes**

21 U.S.C. §§387-387u ........................................................................................... 3

5 U.S.C. §§701, et seq. .......................................................................................... 8

5 U.S.C. §552 ...................................................................................................... 20

5 U.S.C. §552a .................................................................................................... 17

5 U.S.C. §552a(a)(7) ........................................................................................... 21

5 U.S.C. §552a(b) ............................................................................................... 17

5 U.S.C. §552a(b)(11) ................................................................................... 18, 19

5 U.S.C. §552a(b)(2) ........................................................................................... 20

5 U.S.C. §552a(b)(3) ........................................................................................... 21

5 U.S.C. §552a(e)(4)(D) ..................................................................................... 21

5 U.S.C. §706 ........................................................................................................ 9

5 U.S.C. §706(2)(A) .......................................................................................... 2, 8

5 U.S.C. §706(2)(B) .............................................................................................. 2

5 U.S.C. §706(2)(C) .............................................................................................. 2

5 U.S.C. §706(2)(D) .............................................................................................. 2

5 U.S.C. §706(2)(E) .............................................................................................. 3

5 U.S.C. §706(2)(F) .............................................................................................. 3

## I. INTRODUCTION

Plaintiff, Lost Art Liquids, LLC ("Lost Art"), has challenged a U.S. Food and Drug Administration ("FDA") rule that deems "vapor products" -- including e-liquids and personal electronic vaporizers that neither contain nor are derived from tobacco -- to be "tobacco products" subject to FDA regulation, FDA-2014-N-0189, 81 Fed. Reg. 28,973 (May 10, 2016)("Deeming Rule")[2]. Despite many good faith attempts, Lost Art has been unable to procure from Defendants the full administrative record ("AR"), without which this action cannot proceed.

Defendants' have represented that the AR comprises approximately 130,000 documents, totaling over 200,000 pages. Lost Art has not seen the majority of the AR and is uncertain of its contents, sufficiency, and how long it will take to review. Defendants have produced a subset of the AR, namely one compact disc, labeled "1 of 4", but refuse to produce the remaining documents ("AR Remainder") absent an onerous protective order because such documents presumably contain "private" information, i.e., the contact details of the individuals who submitted them to the public docket ("Identifying Information").

With the exception of a single document[3], there is no legal basis for Defendants' refusal to produce the AR Remainder; the Identifying Information is not confidential or otherwise worthy of protection. Nevertheless, Lost Art has attempted to reach a compromise with Defendants, even suggesting that it would accept a redacted version of the AR. Without further explanation and despite the vast resources available to the

---

[2] Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Restrictions on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products; Code of Federal Regulation Citations: 21 C.F.R. §1100, 21 C.F.R §1140, and 21 C.F.R. §1143.

[3] Defendants' counsel has indicated that a single document in the AR was submitted to FDA confidentially. Lost Art concedes that an appropriately worded protective order, consistent with the Court's model Protective Order, may be appropriate regarding this single document (submitted by a cigar company)("Cigar Document"), if it was in fact submitted to FDA in confidence.

1

federal government, Defendants have simply indicated that redaction is "impractical".

The United States Supreme Court has held that:

> In all [APA] cases, agency action must be set aside if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if the action failed to meet statutory, procedural, or constitutional requirements. 5 U.S.C. §§ 706(2)(A), (B), (C), (D) (1964 ed., Supp. V). In certain narrow, specifically limited situations, the agency action is to be set aside if the action was not supported by "substantial evidence." And in other equally narrow circumstances, the reviewing court is to engage in a de novo review of the action and set it aside if it was "unwarranted by the facts." 5 U.S.C. §§ 706(2)(E), (F) (1964 ed., Supp. V).

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971). The Court also made clear that judicial review was to be made "**on the full administrative record**" *Id*. at 420 (emphasis added).

Lost Art looks forward with great anticipation to fully informing the Court of the many legal deficiencies associated with Deeming Rule, including FDA's legal missteps in its overzealous effort to eradicate tobacco products, including vapor products that neither contain nor are derived from tobacco. Lost Art cannot proceed, however, without the full AR.

There is a lot at stake. Although the Family Smoking Prevention and Tobacco Control Act, Public Law 111–31, 21 U.S.C. §§387-387u ("Tobacco Control Act") prohibits FDA from banning a class of products, the Deeming Rule is a de facto ban that will eventually lead to the removal of nearly all existing vapor products from the market. Given the number of lives that will be lost to cigarette smoking-related diseases if these vapor products are removed from the market, FDA's issuance of the Deeming Rule

equates to a culpable dereliction of public duty.[4]  In contrast to recent non-binding announcements, FDA's Deeming Rule simply does not fulfill its Congressional mandate to protect the public health, which includes the health of smokers.

Accordingly, for all of the reasons set forth herein, Lost Art respectfully requests (1) vacation of the schedule set forth the in the Court's Orders of August 16, 2017

---

[4] On August 15, 2015, long before issuance of the Deeming Rule, the United Kingdom government issued a press release with the following heading: "E-cigarettes Around 95% Less Harmful Than Tobacco Estimates Landmark Review".

> An expert independent evidence review published today by Public Health England (PHE) concludes that e-cigarettes are significantly less harmful to health than tobacco and have the potential to help smokers quit smoking.
>
> Key findings of the review include:
>
> – the current best estimate is that e-cigarettes are around 95% less harmful than smoking
>
> – nearly half the population (44.8%) don't realise e-cigarettes are much less harmful than smoking
>
> – there is no evidence so far that e-cigarettes are acting as a route into smoking for children or non-smokers
>
> * * *
>
> Professor Ann McNeill, King's College London . . ., said: . . . "**E-cigarettes could be a game changer in public health in particular by reducing the enormous health inequalities caused by smoking**."
>
> Professor Peter Hajek, Queen Mary University London . . .said: "**My reading of the evidence is that smokers who switch to vaping remove almost all the risks smoking poses to their health**."

Available at https://www.gov.uk/government/news/e-cigarettes-around-95-less-harmful-than-tobacco-estimates-landmark-review (emphasis added); attached hereto as Appendix 1.

In July 2017, the United Kingdom government issued a plan with the aim of creating a smoke-free generation, wherein it stated that vaping should even be allowed in offices and enclosed public spaces to "maximise" access to safer alternatives to smoking.  *See Towards a Smoke-free Generation: A Tobacco Control Plan for England* (July 2017), available at https://www.gov.uk/government/uploads/system/uploads/attachment_data/file/630217/Towards_a_Smoke_free_Generation_-_A_Tobacco_Control_Plan_for_England_2017-2022__2_.pdf; attached hereto as Appendix 2.

3

(Electronic Case File ("ECF") No. 39), and (2) entry of an Order compelling production and certification of the full AR.[5]

## II.  BACKGROUND

Early in this case, Defendants stipulated that they would provide the complete AR, subject to an agreed upon protective order. (ECF 34 at 138.)  Since then, Defendants have had numerous leadership personnel changes that have prompted Defendants to "more fully consider the issues raised in this case and determine how best to proceed." (*See* ECF No. 36 at 148; ECF No.  38 at 147.)

One feature of FDA's "more ful[some] consider[ation] of the issues raised in this case" was its July 28, 2017 announcement of a "new comprehensive plan" for the regulation of tobacco products, including the vapor products at issue here ("New FDA Plan").[6] While the New FDA Plan extends a particular deadline by four years, it does not provide any relief to Lost Art.  The New FDA Plan does not withdraw the Deeming Rule. It does not remove nor lessen the regulatory burdens on Lost Art.  It in no way alters the inevitable financial ruin of Lost Art and the entire vapor industry, with perhaps the exception of Big Tobacco (which has now entered the vapor industry), and it does not allow for newer, more innovative vapor technologies to enter the market for the benefit of consumers seeking an alternative to smoking.

Lost Art doubts that FDA would have announced the FDA New Plan without significant pressure from outside, third-party public health advocates. These advocates, including numerous internationally renowned academics and public health officials, have come to scientific conclusions similar to those of the United Kingdom government and

---

[5] Defendants' counsel has indicated that a single document in the AR was submitted to FDA confidentially.  Lost Art concedes that an appropriately worded protective order, consistent with the Court's model Protective Order, may be appropriate regarding this single document (submitted by a cigar company)("Cigar Document"), if it was in fact submitted to FDA in confidence.

[6] *See* https://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm568923.htm; attached hereto as Appendix 3.

4

more fully appreciate the significant harm the Deeming Rule poses to public health.

For example, in a letter to FDA Commissioner Gottlieb, the National Tobacco Reform Initiative ("NTRI") stated:

> In the short term, some decisive action is required to put the approaching authorization requirements for vapor technologies on hold, because it is threatening the demise of an entire class of potentially viable alternative nicotine products. While a few large companies may be able to meet the proposed deeming requirements, we would like to see more competition in the marketplace, in general, as this favors consumers.

NTRI July 7, 2017 Letter to Commissioner Gottlieb, available at http://www.tobaccoreform.org/wp-content/uploads/2017/07/Letter-To-FDA-Commisioner-Scott-Gottlieb.pdf, at p. 1; attached hereto as Appendix 4.[7]

In another recent letter to Commissioner Gottlieb, regarding defects in Deeming Rule, Iowa Attorney General Thomas Miller and numerous renowned scientists wrote:

> **The current regime for low-risk products is burdensome and opaque, and far more onerous than for cigarettes**. The FDA's own estimates show application costs of between $286,000 and $2.6 million for electronic nicotine delivery devices and between $182,000 and $2.0 million for e-liquids.

Iowa Attorney General Thomas Miller June 14, 2017 letter to Commissioner Gottlieb, available at https://www.iowaattorneygeneral.gov/media/cms/Gottlieb_letter_497127D63D65F.pdf at

---

[7] The NTRI letter was signed by a former American Cancer Society Vice President (Public Education and Tobacco Control), a former American Heart Association Vice President (Public Policy and Legislative Counsel), a former US Public Health Service Director (Office on Smoking and Health), and professors at Stanford University, the Indiana University School of Public Health, and the Medical University of South Carolina, Professor.

5

p. 2 (emphasis added); attached hereto as Appendix 5.[8]  Lost Art seeks to illustrate the illegality of the Deeming Rule, and the defects and issues alluded to above in its challenge but cannot advance its argument without the full AR.

### III.  ARGUMENT

The parties have a fundamental dispute over Defendants' obligation to produce the AR that establishes the basis for its rulemaking, which it is required to do under the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 701, et seq. The APA directs courts to hold unlawful and set aside final agency action, findings, and conclusions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). *See*, *e.g.*, *Bennett v. Spear,* 520 U.S. 154, 175 (1997) (describing "final" agency action).

#### A.  Defendants are Required to Produce the Full Administrative Record.

In challenges to agency actions brought under the APA, review "is to be based on the full administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 420; *Friends of the Earth v. Hintz*, 800 F.2d 822, 829 (9th Cir. 1986); 5 U.S.C. §706.  "As subsequently interpreted by the lower courts, the 'whole' administrative record has come to be seen as 'all documents and materials directly or indirectly considered by agency decisionmakers and includes evidence contrary to the agency's position.'" *Ammex, Inc. v. United States*, 62 F. Supp.2d 1148, 1156 (Ct. Int'l Trade 1999); *see also Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555-56 (9th Cir. 1989); *Miami Nation of Indians of Indiana v. Babbitt* ("*Miami Nation*"), 979 F. Supp. 771, 774 (N.D. Ind. 1996).  An agency must produce an administrative record to supply the evidence for the affirmative decisions that it made at the time that it made them. *See Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 420;

---

[8] Attorney General Miller's letter was also signed by professors at New York University College of Global Health, Yale School of Public Health, Yale University School of Medicine, University of Minnesota, University of Chicago, Johns Hopkins School of Public Health, Georgetown University Medical Center, Harvard T.H. Chan School of Public Health, University of California (San Francisco), University of Michigan, and University of Ottawa.

6

*see also Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993).  Additionally, with respect to compilation of the AR, "**a document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record**.'" *Miami Nation*, *supra*, at 777 (quoting *Clairton Sportsmen's Club v. Pennsylvania Turnpike Commission*, 882 F. Supp. 455, 464 (W.D.Pa.1995) (emphasis added)).

> Having the "whole record"' before it is crucial to the court's review under the APA. "The reason is that the court cannot determine whether the final agency decision reflects the rational outcome of the agency's consideration of all relevant factors when the court has no idea what factors or data were in fact considered by the agency. In assessing whether the agency's action was arbitrary and capricious, the court must test the action against the 'full administrative record that was before the (agency official) at the time he made the decision.'"

*Miami Nation*, *supra*, at 775.  The *Miami Nation* Court went on to state:

> The United States contends that the Administrative Record should consist of material relevant only to the merits of the agency's decision; the Miamis contend that **the Record should include material relevant to the process of making that final determination**.  The court agrees with the Miamis.

*Id.* at p. 776 (emphasis added).

Therefore, if FDA considered, even indirectly, materials relevant to the process of finalizing the Deeming Rule, including internal guidelines, memoranda, manuals or other otherwise, those materials should be included in the AR. *See id.; see also Ammex Inc. v. United States,* 62 F. Supp.2d 1148, 1156.

**B.     Defendants Have no Justification for Redaction of the Record or Requiring a Protective Order.**

Defendants' counsel have conceded that Defendants are obligated to produce the AR, and have indicated that -- although not identical to the AR -- the vast majority of the AR can be found in the public domain.  Lost Art, however, is unable assess the accuracy of Defendants' assertion without examining the full AR.  Moreover, given the voluminous nature of the AR, it would be unduly burdensome for Lost Art to attempt to parse through what is publicly available, and then be forced to make a second review of the AR certified to the Court.

The only proffered basis for Defendants' position that certain AR documents ought to be kept private is the unsubstantiated assumption that individuals who offered public submissions expect their Identifying Information to be kept confidential.  Defendants have not presented any legal basis or evidence to support this position.

Defendants cannot simply assume that those who submitted comments expected or even wanted Identifying Information to be kept private.  To the contrary, those who submitted public comments did so with full knowledge and acceptance that Identifying Information could and would be shared publicly.  The vapor movement is comprised of some of the most highly motivated, engaged, and passionate citizens who -- for the benefit of others -- wish to openly share their ideas, research, and personal experiences.  Those individuals who chose to submit comments during the rulemaking process did so with the express desire to state publicly their opinions regarding the Deeming Rule, and in many cases to share their personal stories about how vaping products have positively impacted their lives by serving as an alternative to cigarettes.  Many of those who submitted comments did so for the first time in their lives, hoping that their comments would be shared and could help shape "policy ideas that would encourage rather than discourage e-cigarette use" and so that "government -- especially the federal government -- could nudge many more Americans to quit smoking and eventually save millions of lives."  *See* http://beta.latimes.com/opinion/op-ed/la-oe-0910-sugarman-encourage-

vaping-20150910-story.html, citing the United Kingdom government study indicating that e-cigarettes are 95% safer than burned tobacco products; attached hereto as Appendix 5A.  These individuals did not intend to have such important stories diminished by a protective order; rather, they intended to have their comments shared publicly.

Moreover, the web-based interface used by FDA to solicit comments (www.regulations.gov ("Regulation Website")),[9] provided ample notice to "commenters" that their Identifying Information would be public, thus nullifying any expectation of privacy.  The Regulation Website provides, in pertinent part:

> The material you submit to a federal department or agency through Regulations.gov may be seen by various people. **Any personally identifiable information (e.g., name, address, phone number) included in the comment form or in an attachment will be provided to the department or agency to which your comment is directed and** *may be publicly disclosed in a docket or on the Internet (via Regulations.gov, a federal agency website, or a third-party, non-government website with access to publicly-disclosed data on Regulations.gov).*
>
> Regulations.gov offers its public data in machine readable format via an Application Programming Interface ("API"), *including comment submitter information (e.g., commenter name or address)* if included in the comment submission posted by the agency on Regulations.gov. Third party organizations may use an API to build related applications for the web, desktops, and mobile devices.

Regulation Website, https://www.regulations.gov/privacyNotice (emphasis added); attached hereto as Appendix 6.[10]

---

[9] The public can also submit comments to FDA via the U.S. mail.  Based on its communication with Defendants' counsel, Lost Art does not believe that Defendants seek to such comments.

[10] *See also* Regulations.gov Frequently Asked Questions, https://www.regulations.gov/faqs ("What personal information does Regulations.gov collect?  For purposes of submitting

Likewise, the Regulation Website User Notice offers similar explicit caveats and disclaimers, advising anyone who posts comments that their submission, including personally identifying information, will not be kept confidential and may be publicly disclosed. Under the heading "Intended Use of Information," the User Notice reads:

> The material you submit to a federal department or agency through Regulations.gov may be seen by various people. **Any personal information included in the comment form or in an attachment** will be provided to the department or agency to which your comment is directed and **may be publicly disclosed in a docket or on the Internet** (via Regulations.gov, a federal agency website, or a third-party, non-government website with access to publicly-disclosed data on Regulations.gov).

https://www.regulations.gov/userNotice (emphasis added); attached hereto as Appendix 8.

In addition to these notices, which eliminated any expectation of privacy. Commenters could elect to complete the name field (with their real name or an alias), or advance through the various fields. Entry of a physical or email address was also optional, and only possible if the commenter purposely checked a box to provide additional information.

### C. Defendants cannot establish Good Cause for a Protective Order.

Defendants bear the burden of demonstrating why the imposition of a protective order is appropriate. Fed. R. Civ. P. 26(c); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F. 3d 1122, 1130-32 (9th Cir. 2003) (an actual showing of good cause for protection under Federal Rule of Civil Procedure 26(c) is required), citing *Phillips v.*

---

comments, some agencies may require that you include personal information, such as your name and email address on the comment form. **This information may be publicly disclosed** in a docket or on the Internet (via Regulations.gov and/or Regulations.gov APIs, a federal agency website, or a third-party, non-government website with access to publicly disclosed data on Regulations.gov).") (emphasis added); attached hereto as Appendix 7.

*General Motors*, 307 F.3d 1206, 1212 (9th Cir. 2002) ("good cause" analysis must be conducted to support protective order); *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987)("The burden is on the party requesting a protective order to demonstrate that (1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm.").

Defendants cannot satisfy the requisite burden to justify a protective order; there is no evidence that the information sought to be protected is a trade secret or other confidential information within the scope of Rule 26(c) or that disclosure would cause an identifiable, significant harm. *See*, e.g., *Deford v. Schmid Prods. Co.*, *supra*, at 653 (D. Md. 1987). "A party asserting good cause bears the burden, for **each particular document** it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz, supra*, at 1130 (emphasis added); *see also Phillips*, *supra*, at 1210-11; *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992).

Defendants recently produced a single redacted document to demonstrate the kind of document they believe should be subject to a protective order. *See* Exhibit 1. This document, however, does not support Defendants' insistence on a protective order. To the contrary, it contains absolutely no confidential information or any data the submitter could have reasonably expected would be kept in confidence.

Defendants cannot establish good cause as to why the Identifying Information, which was voluntarily and knowingly provided, ought to be subject to a protective order. The full AR should be produced without further delay, with no limitation on Lost Art's use.

**D.     The Privacy Act does not Prevent FDA from Producing the Record.**

During the parties' meet and confer, Defendants referenced -- without specificity -- the Privacy Act of 1974, 5 U.S.C. §552a, as a basis for their refusal to produce the AR

11

Remainder without a protective order.  Defendant's reliance on the Privacy Act is without merit.

The Privacy Act, establishes the practices that governs the collection, maintenance, use, and dissemination of information about individuals that is maintained by federal agencies. The Privacy Act prohibits the disclosure of "any record which is contained in a system of records" about an individual absent consent, unless the disclosure is pursuant to one of twelve statutory exceptions.  5 U.S.C. §552a(b).

### 1. The Privacy Act is not Applicable.

The Privacy Act defines "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history. . . ."  Unlike an individual's medical records that might be submitted to FDA in the context of clinical drug trials, the documents in question here are not "about" the individual.  Rather, they merely reflect the individual's professional or personal thoughts regarding proposed FDA regulations.  Accordingly, the Privacy Act is not applicable.

### 2. There is no Privacy Interest.

Furthermore, Lost Art is not seeking information without the consent of the individual who submitted it.  As was thoroughly documented above, all submitters were notified explicitly that any Identifying Information they elected to provide would or could be shared publicly.

### 3. Even if There Were a Privacy Interest, the Privacy Act is Not a Legal Basis for Withholding the Full AR.

Even if, *arguendo,* the Privacy Act were applicable, there are several well-established exceptions to the "no disclosure without consent" rule that permit the release of personal information without the individual's consent. At least three of these exceptions support production of the AR without redaction, and also protect Defendants from any privacy claims.

### a. Documents can be Produced under the Privacy Act Pursuant to Court Order.

The Privacy Act permits production of documents pursuant to an order of a court of competent jurisdiction. 5 U.S.C. §552a(b)(11). Here, if this Court finds that Defendants are obligated to produce the complete AR and compels that production, Defendants would bear no further responsibility for preventing disclosure under the Privacy Act. The legislative history indicates that "a court is not defined as an 'agency' nor is it intended to be a 'person' for purposes of [the Privacy Act]," and that the Act was "not designed to interfere with access to information by the courts." 120 Cong. Rec. 36,967, reprinted in Source Book on Privacy at 958-59; attached hereto as Appendix 9.

Subsection (b)(11) contains no standard governing the issuance of an order authorizing the disclosure of otherwise protected Privacy Act information. "[T]he Privacy Act does not establish a qualified discovery privilege that requires a party seeking disclosure under 5 U.S.C. § 552a(b)(11) to prove that its need for the information outweighs the privacy interest of the individual to whom the information relates." *Ford Motor Co. v. United States*, 825 F. Supp. 1081, 1083 (Ct. Int'l Trade 1993). *See also Laxalt v. McClatchy*, 809 F.2d 885, 888-90 (D.C. Cir. 1987); *SEC v. Gowrish*, No. C 09-05883, 2010 WL 1929498, at *2 (N.D. Cal. May 12, 2010). The only test for discovery of Privacy Act-protected records is "relevance" under Rule 26(b)(1) of the Federal Rules of Civil Procedure. *See Laxalt*, 809 F.2d at 888-90. Here, the entire AR is clearly relevant to Defendants' basis for imposing the Deeming Rule and Lost Art's challenge thereto. Defendants do not dispute this.

### b. Documents can be Produced under the Privacy Act Pursuant to a Freedom of Information Act ("FOIA") Request.

The Privacy Act also permits production of documents when disclosure is would be required under 5 U.S.C. §552, the Freedom of Information Act ("FOIA"). 5 U.S.C. §552a(b)(2). The basis for this exception is that the Privacy Act never prohibits a disclosure that the Freedom of Information Act requires. *See News-Press v. DHS*, 489

13

F.3d 1173, 1189 (11th Cir. 2007) ("The net effect of the interaction between the two statutes is that where the FOIA requires disclosure, the Privacy Act will not stand in its way, but where the FOIA would permit withholding under an exemption, the Privacy Act makes such withholding mandatory upon the agency.").

There is no basis for withholding the Identifying Information under FOIA[11], and Lost Arts will, if necessary, make a FOIA request to FDA to produce the full AR. This action, however, should proceed in a timely fashion and not be further delayed by FDA's assessment of and eventual production of documents pursuant to a FOIA request.

### c.  **Documents can be Produced Under the Privacy Act Based on Routine Use.**

The Privacy Act also permits disclosure "for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D)." 5 U.S.C. §552a(b)(3). Subsection (e)(4)(D) requires Federal Register publication of "each routine use of the records contained in the system, including the categories of users and the purpose of such use." Subsection (a)(7) defines the term "routine use" to mean "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected." The requisite conditions for the application of this exception to the Privacy Act were clearly met in the FDA's notice of proposed rulemaking, 79 Fed. Reg. 23142 (April 25, 2014).

### E.  **Plaintiff is Harmed by not Having the Full Administrative Record.**

By further delaying production of the AR, Defendants harm the interests of Lost Art and the public[12], and impede Lost Art's ability to move forward with this litigation.

---

[11] *See* 5 U.S.C. 552 (b)(1-9).

[12] *See* Section II, *supra*.  The court should also be aware that ongoing research in the United States supports the United Kingdom's 2015 findings and policy regarding vapor products.  On October 2, 2017, a research team, led by investigators from Georgetown University, Yale University, and the University of Michigan, and funded by the National Institutes of Health, announced that "[u]p to 6.6 million cigarette smokers will live substantially longer if cigarette smoking is replaced by vaping over a ten-year period".  *See* https://gumc.georgetown.edu/news/Tobacco_Smokers_Could_Gain_86%20Million_Years_of_Life_if_they_Switch_to_Vaping_Study_Finds; attached hereto as Appendix 10; *see* underlying

Because of FDA's inappropriate, illegal, and seeming cavalier implementation of the Demining Rule, refusal to respond to requests for clarification[13], and use of wholly inadequate software systems[14], Lost Art and those similarly situated continue to

---

study at Tobacco Control, 2017; tobaccocontrol-2017-053759 DOI: 10.1136/tobaccocontrol-2017-053759: David T Levy, Ron Borland, Eric N Lindblom, Maciej L Goniewicz, Rafael Meza, Theodore R Holford, Zhe Yuan, Yuying Luo, Richard J O'Connor, Raymond Niaura, David B Abrams. Potential deaths averted in USA by replacing cigarettes with e-cigarettes..

[13] Lost Art's counsel have attempted since November 23, 2016, via 18 separate emails and numerous telephone calls to the FDA Ombudsman, Office of Small Business, and others, to clarify how FDA wished to have multiple contract manufacturers of the same product complete product registration, the deadline for which was September 30, 2017 (extended to October 12, 2017 due to FDA technical difficulties (see footnote 17, below).  FDA never provided a substantive response, and these questions are now moot given the deadline.

[14] Although FDA "strongly encourages" use of its FURLS ("FDA Unified Registration and Listing System") to submit information and data mandated by the Tobacco Control Act and the Deeming Rule, Lost Art and many other regulated companies have reported -- and FDA has acknowledged -- ongoing FURLS functionality issues.  These "functionality issues have resulted in the **completely needless** expenditure of legal and technical fees, as well as significant management time. Worse still is the lack of assistance from FDA; the FURLS helpdesk staff frequently do not respond to requests and questions.

Just five days before the September 30, 2017 deadline for Registration and Product Listing, FDA Commissioner, Dr. Scott Gottlieb, tweeted that due to "website connectivity problems" with FURLS, FDA would be "implementing a short-term extension to allow firms to register". It was not until September 28, 2017, that FDA officially announced via e-mail that it was revising its guidance -- once again -- to extend the deadline to October 12, 2017. *See* https://www.fda.gov/TobaccoProducts/GuidanceComplianceRegulatoryInformation/ucm386651.htm ("Due to intermittent outages of the FDA Unified Registration and Listing System (FURLS), the FDA has extended the registration and listing compliance deadline until October 12, 2017. If you continue to experience technical difficulties with FURLS, please email CTPRegistrationandListing@fda.hhs.gov."); attached hereto as Appendix 11.

With regard to Ingredient Listings, the Deeming Rule required submission by February 8, 2017, or August 8, 2017 for small-scale manufacturers.  FDA has now extended the deadlines for this submission to May 8, 2018, and November 8, 2018, respectively.  "Due to technical issues. . ., FDA extended the compliance deadlines for ingredient listing requirements by six months. . ." https://www.fda.gov/TobaccoProducts/Labeling/RulesRegulationsGuidance/ucm191982.htm; attached hereto as Appendix 12.  It is interesting to note the very different and *disingenuous* explanation given for this extension in FDA's November 2017 Guidance for Industry - Listing of Ingredients in Tobacco Products: "FDA recognizes that some manufacturers of newly deemed products are not familiar with the forms for listing ingredients and, therefore, may need additional time to complete them accurately."  Available at

15

needlessly expend hundreds of thousands of dollars in an attempt to remain compliant with the requirements of the illegal and ill-conceived Deeming Rule. Without appropriate review of the Deeming Rule and underlying legislation, Lost Art and thousands of other businesses similarly situated will not be able to survive the unreasonable and unlawful provisions of the Deeming Rule.

**IV.    CONCLUSION.**

Lost Art must have access to the full AR and sufficient time to review and analyze the AR well in advance of filing a Motion for Summary Judgment. Additionally, given the New FDA Plan and related announcements, which highlight some of the legal deficiencies of the Deeming Rule, Lost Art believes that discovery may be warranted for the purpose of effective judicial review. However, Lost Art must have access to the full AR in order to properly frame any potential discovery requests.

Therefore, for all of the reasons stated herein, Lost Art respectfully requests an Order: (1) vacating the briefing schedule set forth the in the Court's Order of August 16, 2017 (ECF No. 39), and (2) compelling Defendants to produce to Lost Art and certify to the Court the full AR.

November 13, 2017

Respectfully submitted,

DAMAN AND ASSOCIATES, LLP

s/ Phillip Daman
Phillip Daman
1455 Pennsylvania Ave, NW, Suite 400
Washington, DC. 20004
Telephone: 202.660.1447
Email: Phillip.Daman@DamanLLP.com

---

https://www.fda.gov/downloads/TobaccoProducts/Labeling/RulesRegulationsGuidance/UCM527044.pdf at p. 14; attached hereto as Appendix 13.

16