BRETT A. SHUMATE
Deputy Assistant Attorney General
JOEL McELVAIN
Assistant Director
ERIC B. BECKENHAUER, Cal. Bar No. 237526
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Tel: (202) 514-3338
Fax: (202) 616-8470
Email: eric.beckenhauer@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOST ART LIQUIDS,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>FOOD AND DRUG ADMINISTRATION, *et al.*,<br><br>　　　　　　　Defendants. | No. 2:16-cv-03468-SJO-FFM<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF ADMINISTRATIVE RECORD**<br><br>Date:  December 11, 2017<br>Time:  10:00 am<br>Courtroom 10-C<br>Hon. S. James Otero |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii
INTRODUCTION ..................................................................................................... 1
BACKGROUND ....................................................................................................... 3
      A.    The Deeming Rule ................................................................................ 3
      B.    The Administrative Record .................................................................. 4
      C.    Deeming Rule Litigation ...................................................................... 6
      D.    This Action ........................................................................................... 7
ARGUMENT ............................................................................................................. 8
I.    Plaintiff's Motion to Compel Production of the Administrative Record Without a Protective Order Should be Denied ..................... 9
      A.    There Is Good Cause for a Protective Order ...................................... 9
      B.    The Privacy Act Separately Supports a Protective Order ................ 13
CONCLUSION ....................................................................................................... 14

# TABLE OF AUTHORITIES

**Federal Cases**

*DOJ v. Reporters Comm. for Freedom of Press*,
  489 U.S. 749, 763 (1989) .................................................................................. 11

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) .......................................................................................... 16

*Forest Serv. Emples. v. U.S. Forest Serv.*,
  524 F.3d 1021 (9th Cir. 2008) .......................................................................... 12

*Isiwele v. HHS*,
  85 F. Supp. 3d 337 (D.D.C. 2015) .................................................................... 11

*Mortensen v. Bresnan Commc'ns, LLC*,
  722 F.3d 1151 (9th Cir. 2013) .......................................................................... 11

*Nat'l Sec. News Serv. v. U.S. Dep't of Navy*,
  584 F. Supp. 2d 94 (D.D.C. 2008) .................................................................... 11

*News-Press v. DHS*,
  489 F.3d 1173, 1189 (11th Cir. 2007) ........................................................ 10, 15

*Nicopure Labs LLC v. FDA*,
  Nos. 16-878, 16-1210, 2017 WL 3130312, (July 21, 2017) ............................... 7

*Phillips v. GMC*,
  307 F.3d 1206 (9th Cir. 2002) ...................................................................... 9, 10

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) .............................................................................................. 9

*Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*,
  249 F. Supp. 3d 516 (D.D.C. 2017) .................................................................... 9

*U.S. Dep't of Defense v. Fed. Labor Relations Auth.*,
  510 U.S. 487, 500 (1994) ............................................................................ 11, 12

*United States v. Microsoft Corp.*,
  165 F.3d 952 (D.C. Cir. 1999) ..................................................................... 9, 10

*Williams v. Dep't of Veterans Affairs*,
  104 F.3d 670, 673 (4th Cir. 1997) .................................................................... 14

*Yonemoto v. VA*,
  686 F.3d 681 (9th Cir. 2012) ...................................................................... 11, 12

**Federal Statutes and Rules**

5 U.S.C. § 552a(b) ............................................................................................. 13, 14

Fed. R. Civ. P. 26 .................................................................................................. 9, 16

# INTRODUCTION

Plaintiff's motion to compel production of the administrative record is truly puzzling. Defendants fully agree that this case should be reviewed on the administrative record. They produced the portions of the record not subject to the parties' proposed protective order back in January. And they have long been prepared to produce the balance of the administrative record to Plaintiff upon entry of a protective order. In fact, they have done so in several analogous challenges to the agency rule at issue here, after the plaintiffs in those cases agreed to a protective order—which Plaintiff here previously agreed was appropriate, but now refuses to finalize.

The administrative record in this case spans more than 230,000 pages and contains over 135,000 comments. Many of those comments were submitted online at regulations.gov, where commenters were advised that certain personally identifying information, including names and email addresses, would not be publicly posted unless included in the text of their comments. Given that the rule at issue concerns the regulation of tobacco products, many of those comments also include sensitive health information. And at least one submission was marked as confidential by the submitter and may include confidential business information.

Accordingly, in late December 2016, Defendants sent Plaintiff a proposed protective order that would guard against the unnecessary public disclosure of this information. The proposed order mirrored orders that had already been agreed to by the parties and entered by the courts in three analogous challenges to the rule at issue, and that has since been entered in a fourth. It was narrowly tailored to protect only the personally identifying information collected by regulations.gov— not the text of the comments themselves—and the submission marked confidential. And Defendants explained that the text of the comments was already generally available on regulations.gov, in searchable format, for Plaintiff's review.

In early January, shortly after receiving Defendants' proposal, Plaintiff stipulated that a protective order was appropriate and that the production of the balance of the administrative record should await its entry. Since then, however, Plaintiff has refused to finalize its terms. As recently as August 15, Plaintiff again stipulated that a protective order was appropriate. Yet now, on the eve of the deadline to file its opening brief—a deadline it had already missed once, and has now missed a second time—Plaintiff suggests that Defendants have inappropriately "withheld" the record.

Plaintiff is mistaken. There continues to be good cause for entry of a protective order, particularly given that web-based commenters could reasonably understand that their personally identifiable information would not be publicly posted. The text of those comments has been publicly available all along—in a robust, text-searchable format—so this issue cannot reasonably have affected Plaintiff's ability to prepare its opening brief. The plaintiffs in the other cases where the protective order has been entered have readily agreed that it is appropriate to protect this information, and have seen no need to cite it in their merits briefs. And even now, Plaintiff concedes that a protective order is appropriate, at least to protect information marked as confidential. Mem. in Supp. of Pl.'s Mot. to Compel ("Pl.'s Br.") 1 n.3 (ECF No. 40-1).

The Court should deny Plaintiff's motion and enter the attached proposed protective order, after which Defendants will promptly provide the balance of the administrative record, as they have long been prepared to do. Although Plaintiff has now twice missed its deadline to file its opening brief, if the Court wishes to permit Plaintiff to proceed with this case, Defendants stand ready to confer regarding a proposed revised summary judgment briefing schedule.

# RELEVANT BACKGROUND

## A. The Deeming Rule

This case concerns an FDA rule—known as the "deeming rule"—that deems electronic cigarettes (among other products) to be "tobacco products" subject to regulation under Chapter IX of the Federal Food, Drug, and Cosmetic Act.[1] An electronic cigarette ("e-cigarette") is a device that vaporizes a liquid, usually containing nicotine ("e-liquid"), allowing it to be inhaled as an aerosol.

The deeming rule generally subjects these products to the same regulatory scheme that has applied to conventional cigarettes since the Tobacco Control Act was passed in 2009. That scheme requires, among other things, that manufacturers register with the FDA, submit listings of their products and ingredients, obtain premarket review of new products, refrain from distributing free samples, and include health warnings on packaging.

The deeming rule was published in May 2016 and took effect in August 2016, although the FDA has announced lengthy compliance periods for many requirements to give the industry time to comply.[2] For example, manufacturers of noncombustible tobacco products, like e-cigarettes and e-liquids, have until August 8, 2022, to submit applications for premarket review. *Id.*

---

[1] *See generally* FDA, *Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Restrictions on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products*, No. FDA-2014-N-0189, 81 Fed. Reg. 28,973 (May 10, 2016), *available at* https://go.usa.gov/xnBz9.

[2] *See Extension of Certain Tobacco Product Compliance deadlines Related to the Final Deeming Rule, Guidance For Industry* (rev. Nov. 2017), *available at* https://go.usa.gov/xnBuw.

3

### B. The Administrative Record

The proposed deeming rule generated significant public interest and prompted over 135,000 comments.

In the preamble to the proposed rule, the FDA addressed the public availability of comments submitted online. It explained to potential commenters that "your name, contact information, and other information identifying you will be posted on http://www.regulations.gov *if* you include that information in the body of your comments."[3] Thus, individuals who did not put their personally identifying information in the body of their comment could reasonably expect that this information would not be publicly posted.

The FDA's description in the preamble is consistent with the platform for submitting comments on regulations.gov. To comment, an individual clicks the "Comment Now!" button, which pulls up a comment form. After the individual fills in the appropriate fields (some are required, and some are optional, including the first and last names, and email address), the individual clicks "continue." The website then provides a preview of the comment, specifically indicating what "information will appear on Regulations.gov" (including the text of the comment and an identification of the commenter's category, such as "individual consumer"), and what "information will **not** appear on Regulations.gov" (*e.g.,* first and last name). *See* Ex. A (sample comment submission preview) (emphasis in original). Thus, individuals who submit comments on regulations.gov and do not provide their name or email address in the body of the comment are informed that their personally identifying information will not be publicly posted.

---

[3] FDA, *Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act; Regulations on the Sale and Distribution of Tobacco Products and Required Warning Statements for Tobacco Products*, No. FDA-2014-N-0189, 79 Fed. Reg. 23142, 23197 (April 25, 2014) (emphasis added), *available at* https://go.usa.gov/xnBzE.

4

When the FDA prepares the administrative record, however, these comments are printed on a form that includes this personally identifying information.  Each web-based submission is printed on a form that contains a "Submitter Information" section with the individual's name and email address.  *See, e.g.*, Ex. B (also available at ECF No. 40-2).  This is information that was not posted online unless the submitter chose to include it in the body of the comment.  *Compare* Ex. B (sample comment as it appears in the administrative record, but with name and email address in the "Submitter Information" section redacted) *with* Ex. C (same sample comment as it appears on regulations.gov, which omits the "Submitter Information" section).[4]  In addition, some individuals chose to discuss their medical information, which is linked to their personally identifying information in the administrative record, but not on the publicly posted version of the comment. *See* Ex. B ("I have been a ecig (vapor) user since 9-10-2011 when I was diagnosed with lung cancer after 50 years of cigarette smoking.").

    The administrative record spans 231,231 pages.  The key studies, reports, and regulatory documents concerning the deeming rule are in pages 1 to 30,429, which Plaintiff has had since January.  The remaining 200,802 pages are comments.  Because personally identifying information is scattered among those pages, it could not be redacted without a cumbersome review.  If printed, those comments would fill approximately 80 banker's boxes.[5]

---

[4] *Available at* https://www.regulations.gov/document?D=FDA-2014-N-0189-7574.

[5] *See, e.g., Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, No. 09-1091, 2012 U.S. Dist. LEXIS 31494, at *18 (D. Minn. Jan. 3, 2012) (estimating "that a banker's box contains on average 2,500 pages of documents").

### C. Deeming Rule Litigation

Within months of its issuance, the deeming rule was challenged by manufacturers, trade associations, and consumers in seven separate lawsuits. Protective orders similar to the one proposed here were promptly entered in four of those cases. *See* Exs. D–G (protective orders).[6] The fifth was voluntarily dismissed,[7] and Defendants objected to jurisdiction in the sixth.[8] This is the seventh.

The plaintiffs in three of the four cases in which a protective order has been entered have filed summary judgment briefs.[9] (The fourth has been stayed and administratively closed.[10]) None cited information covered by the protective order.

In the leading case, *Nicopure Labs, LLC v. FDA*, brought by an e-cigarette and e-liquid manufacturer and a coalition of trade associations, the U.S. District Court for the District of Columbia "uph[e]ld the Deeming Rule" in July 2017 and

---

[6] *Nicopure Labs LLC v. FDA*, No. 16-878 (D.D.C.) (e-cigarette and e-liquid manufacturer) (ECF No. 16), *consolidated with Right to be Smoke-Free Coalition v. FDA*, No. 16-1210 (D.D.C.) (e-cigarette industry trade associations); *Cyclops Vapor 2 v. FDA*, No. 16-556 (M.D. Ala.) (e-liquid manufacturers and e-cigarette vendors) (ECF No. 17); *Sanchez Icaza v. FDA*, No. 16-21967 (S.D. Fla.) (cigar manufacturer) (ECF No. 24); Cigar Ass'n of Am. v. FDA, No. 16-1460 (D.D.C.) (cigar industry trade associations) (ECF No. 19).

[7] *John Middleton Co. v. FDA*, No. 16-996 (D.D.C.) (cigar manufacturer).

[8] *Faircloth v. FDA*, No. 16-5267 (S.D.W. Va.) (e-cigarette consumer and state legislator).

[9] *Nicopure*, No. 16-878 (D.D.C.) (ECF Nos. 20, 21, 46); *Cyclops Vapor 2*, No. 16-556 (M.D. Ala.) (ECF No. 21); *Cigar Ass'n, FDA*, No. 16-1460 (D.D.C.) (ECF Nos. 22, 61).

[10] *Sanchez Icaza*, No. 16-21967 (S.D. Fla.) (ECF No. 36).

granted summary judgment to the FDA.[11] In the wake of that decision, the plaintiffs in another case involving e-cigarettes and e-liquids, *Cyclops Vapor 2 v. FDA*, have sought (jointly with Defendants) to stay further proceedings pending the D.C. Circuit's resolution of the *Nicopure* appeal, and all deadlines have been stayed pending resolution of that joint stay motion.[12]

### D. This Action

Plaintiff in this case, Lost Art Liquids, is a manufacturer of e-liquids and retailer of e-cigarettes, Compl. ¶ 14, who brings claims similar to those in *Nicopure* and *Cyclops Vapor*. Plaintiff filed its complaint in May 2016. *See* ECF No. 1. After service was completed in September 2016, Defendants timely answered in November 2016. *See* ECF No. 32.

In late December 2016, as the parties were discussing a proposed briefing schedule, Defendants sent Plaintiff a proposed protective order that mirrored those that had already been entered in three other cases, and that was soon entered in a fourth. Ex. H (Dec. 30, 2016, email from undersigned counsel). Defendants explained that the "substance of the comments"—as opposed to the private information sought to be protected—was "generally already available in searchable format on regulations.gov" for Plaintiff's review. *Id*.

On January 3, 2017, in the parties' joint stipulation to vacate the scheduling conference and enter a proposed briefing schedule, Plaintiff agreed that a protective order was appropriate. Specifically, Plaintiff stipulated that "certain comments in the administrative record contain information that is private in nature, may be confidential, and may be protected from disclosure under the Privacy Act absent a court order. Accordingly, the entry of an order addressing the disclosure,

---

[11] *Nicopure Labs LLC v. FDA*, --- F. Supp. 3d ---, Nos. 16-878, 16-1210, 2017 WL 3130312, at *1 (July 21, 2017), *appeal docketed*, No. 17-5196 (D.C. Cir. Aug. 31, 2017).

[12] *Cyclops Vapor 2*, No. 16-556 (M.D. Ala.) (ECF Nos. 54, 55).

7

handling, and use of this information would facilitate the production of the full administrative record." ECF No. 34 at 4 n.2. Plaintiff thus stipulated that Defendants should produce "the administrative record (with the exception of information subject to the parties' proposed protective order)" by "January 13, 2017," *id*. at 4, and Defendants did so. Plaintiff further stipulated that the "production of the balance of the administrative record" should take place "as soon as practicable after the Court's entry of a protective order." *Id*.

Since then, however, Plaintiff has refused to finalize its terms. In early 2017, the parties exchanged proposed edits, and Defendants circulated a revised draft in March. In May, Plaintiff indicated that it "d[id]n't believe it had any issues" with the edits that Defendants had circulated in March, but it did not sign off. Ex. I (May 9, 2017, email from Plaintiff's counsel). In August, Plaintiff again stipulated that a protective order was appropriate. ECF No. 38, ¶ 7. Yet it was not until October that Plaintiff finally circulated revisions to Defendants' draft from March, reversing course and suggesting that personally identifying information should be left unprotected. Ex. J (Oct. 2, 2017, email from Plaintiff's counsel).

## ARGUMENT

Defendants fully agree that this case should be reviewed on the administrative record. They promptly produced the portions of the record not subject to the parties' proposed protective order back in January. And they have long been prepared to produce the balance of the administrative record to Plaintiff upon entry of a protective order. Yet, despite having repeatedly stipulated that a protective order is appropriate in this case, Plaintiff has refused to agree to its terms or to negotiate a suitable compromise.

Despite its eleventh-hour about-face, Plaintiff concedes that a protective order is appropriate for confidential business information. Pl.'s Br. 1 n.3. There is equally good cause to protect personally identifying information, particularly given that web-based commenters could reasonably understand that their personally

8

identifiable information would not be publicly posted.  The Court should deny Plaintiff's motion and enter the attached proposed protective order, after which Defendants will promptly produce the balance of the administrative record.

**I.  PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF THE BALANCE OF THE ADMINISTRATIVE RECORD WITHOUT A PROTECTIVE ORDER SHOULD BE DENIED**

### A.  There Is Good Cause for a Protective Order

Federal Rule of Civil Procedure 26(c) authorizes courts, "for good cause," to issue protective orders to guard against "annoyance, embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c), including "to shield portions of administrative records from public disclosure," *Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, 249 F. Supp. 3d 516, 520 (D.D.C. 2017). Courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984), and have "consistently granted protective orders that prevent disclosure of many types of information," "including, *but not limited to*, . . . the information listed in Rule 26(c)," *Phillips v. GMC*, 307 F.3d 1206, 1211–12 (9th Cir. 2002) (emphasis in original).  "The 'good cause' standard is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *United States v. Microsoft Corp.*, 165 F.3d 952, 960 (D.C. Cir. 1999).  If "prejudice or harm will result" in the absence of a protective order, then the Court should "balance[] the public and private interests to decide whether a protective order is necessary." *Phillips*, 307 F.3d 1210–12.

Here, there is good cause to protect the personally identifying information that commenters were informed would not be publicly posted.  Plaintiff believes that commenters want this information disclosed, and argues that the FDA has only an "unsubstantiated assumption that individuals who offered public submissions expect their Identifying Information to be kept confidential." Pl.'s Br. 8.  To this

9

end, Plaintiff cites portions of regulations.gov stating that, *in general*, information submitted on the website "*may* be publicly disclosed." *Id.* at 9–10 & n.10 (quoting privacy notice, user notice, and FAQs) (emphasis added). But those notices would be seen only by individuals who affirmatively look for them on other portions of the website. And they are trumped by the *specific* notices given to commenters here that this "information will **not** appear on Regulations.gov" unless it was in the body of their comment. Ex. A; *see also* 79 Fed. Reg. at 23,197. Thus, if there were any "highly motivated, engaged, and passionate" citizens who wished to publicly identify themselves, Pl.'s Br. 8, they had ample opportunity and instruction to do so.

Moreover, that individuals have protectable privacy interests in the sort of personally identifying information at issue here is well established. "[T]he meaning of 'good cause' in Rule 26(c) is properly informed by the interests underlying the Privacy Act," *Microsoft*, 165 F.3d at 959, and the Freedom of Information Act ("FOIA"), *see News-Press v. DHS*, 489 F.3d 1173, 1189 (11th Cir. 2007) ("where the FOIA would permit withholding under an exemption, the Privacy Act makes such withholding mandatory upon the agency"). In the FOIA context, Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This exemption is commonly applied to protect the personally identifying information of third parties, including names and addresses. *See, e.g.*, *Isiwele v. HHS*, 85 F. Supp. 3d 337, 359 (D.D.C. 2015) (agency "properly redacted under exemption 6 personally identifiable information pertaining to third parties") (internal quotation marks omitted); *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1155 (9th Cir. 2013) ("personally identifying information" includes "first and last name, physical street address, [and] email address").

The privacy interests protected by Exemption 6 are broadly construed, and disclosure of information such as the names and email addresses here without consent is a well-recognized harm. *See U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 500 (1994) ("The privacy interest protected by Exemption 6 'encompass[es] the individual's control of information concerning his or her person.'"); *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989) (same). Further, some of these comments include personal medical information, *see, e.g.*, Ex. B, which is "particularly sensitive," *see Nat'l Sec. News Serv. v. U.S. Dep't of Navy*, 584 F. Supp. 2d 94, 96 (D.D.C. 2008); *Yonemoto v. VA*, 686 F.3d 681, 696 (9th Cir. 2012) ("Information regarding illness or health is personal, and falls under the scope of Exemption 6.").

On the other side of the scale, the "*only* relevant public interest in the . . . balancing analysis is the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Yonemoto*, 686 F.3d at 694 (citation omitted; emphasis in original). Thus, "'information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct' is not the type of information to which FOIA permits access." *Forest Serv. Emps. v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008) (citation omitted). And where there is little or no public interest in disclosure, even "a very slight privacy interest will suffice" to outweigh it. *U.S. Dep't of Defense*, 510 U.S. at 500.

Here, the balance tilts decisively in favor of protecting the personally identifying information at issue, given the commenters' reasonable expectation that their names and email addresses would not be disclosed, the minimal burdens that the proposed protective order places on Plaintiff, and Plaintiff's failure to articulate any purpose that would be served by the public release of this information. Because of the vast size of the record—which includes more than 200,000 pages of

11

comments—it was simply not practicable for the FDA to redact this information, which would have required review of more than 80 banker's boxes of material. Instead, Defendants crafted a narrow protective order that defines the relevant "Protected Information" as follows:

> On any document titled "PUBLIC SUBMISSION" and marked "Category: Individual Consumer," any personally identifying information in the "submitter information" field, including but not limited to name, address, and email address if that information is not disclosed elsewhere in the document.

Ex. K, ¶ 1(a) (proposed protective order).[13]  Significantly, this would have no effect whatsoever on Plaintiff's ability to disclose the text of any comment. Plaintiff would be restricted only from publicly disclosing the name, address, and email address of an individual who chose not to make that personal information publicly available.  If for some reason Plaintiff finds it necessary to reference the author of a comment in its briefs, it could simply attribute the comment to "an individual commenter," or it could seek leave to submit the name of the commenter under seal, *see* Ex. K, ¶ 11.  Notably, however, Plaintiff does not claim any need to link the substance of the comments to particular individuals to advance its claims.  Nor have the plaintiffs in any other deeming case governed by the protective order seen fit to disclose any protected information in their merits briefs.

In short, the proposed protective order does not materially affect Plaintiff's ability to present its case, and it protects only a narrow category of information that is unlikely to be relevant to the Court's review.  There is good cause for its entry.

---

[13] The proposed protective order also defines one other document as "Protected Information": "One other document marked by the Food and Drug Administration ("FDA") as 'Confidential' on the document header found at Bates-numbered pages FDA 231,199–231,225."  Ex. K, ¶ 1(b).  Defendants do not understand Plaintiff to object to this provision in view of its concession that confidential business information is properly protected.  Pl.'s Br. 1 n.3.

### B. The Privacy Act Separately Supports Entry of a Protective Order

The Privacy Act separately supports entry of a protective order. That Act protects certain information about individuals that is maintained by federal agencies, and restricts its disclosure absent a statutory exception. 5 U.S.C. § 552a(b). Plaintiff stipulated in January—and again in August—that "certain comments in the administrative record contain information that . . . may be protected from disclosure under the Privacy Act absent a court order." ECF No. 34 at 4 n.2; ECF No. 38, ¶ 7. Nevertheless, Plaintiff now contends that the Privacy Act has no application.

Plaintiff principally argues that the Privacy Act does not apply because "the documents in question are not 'about' the individual." Pl.'s Br. 12. Its three-sentence argument, which cites no authority, is unpersuasive. The Privacy Act defines "record" to mean "*any* item, collection, or grouping of information about an individual . . . , including, *but not limited to*, his education, financial transactions, medical history, and criminal or employment history" containing certain identifying information. 5 U.S.C. § 552a(a)(4) (emphasis added). "In general, courts have been lenient in determining what information constitutes a 'record' within the meaning of the Act." *Williams v. Dep't of Veterans Affairs*, 104 F.3d 670, 673 (4th Cir. 1997). Plaintiff offers no support for the proposition that an individual's name and email address could not be considered "information . . . about" that person. 5 U.S.C. § 552a(a)(4).

Plaintiff also argues that, assuming the Privacy Act does apply, any protected information could be released under the statutory exception permitting disclosure "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11); *see* Pl.'s Br. 13. Defendants agree, and believe that their proposed protective order is the appropriate means to accomplish disclosure to Plaintiff while narrowly protecting the personally identifiable information from public disclosure. Indeed, the proposed order specifically authorizes Defendants "to

13

1  release Protected Information covered by the Privacy Act, 5 U.S.C. § 552a, without
2  obtaining the prior written consent of the individuals to whom such records or
3  information pertain." Ex. K, ¶ 3.  Plaintiff's proposed order, by contrast, contains
4  no such provision.[14]

5       Finally, Plaintiff asserts that the Privacy Act does "'not stand in [the] way'"
6  of disclosure here because, if Plaintiff filed a FOIA request, "'FOIA [would]
7  require disclosure.'"  Pl.'s Br. 13–14 (quoting *News-Press*, 489 F.3d at 1189).
8  Plaintiff gets it exactly backwards.  As discussed above, FOIA Exemption 6
9  protects personally identifying information like that here.  And, as Plaintiff
10 acknowledges, "where the FOIA would permit withholding under an exemption,
11 the Privacy Act makes such withholding mandatory upon the agency."  Pl.'s Br. 14
12 (quoting *News-Press*, 489 F.3d at 1189).  Thus, this information is properly
13 protected.

## CONCLUSION

15      For the foregoing reasons, the Court should deny Plaintiff's motion and

---

[14] Plaintiff also notes that the Privacy Act contains another statutory exception for disclosures for a "routine use" as described by the agency in a notice published in the Federal Register.  5 U.S.C. § 552a(b)(3), (e)(4)(D); *see* Pl.'s Br. 14.  A government-wide notice addresses the "routine use" disclosure of records from regulations.gov.  *See* 79 Fed. Reg. 9201, 9203 (Feb. 18, 2014), *available at* https://go.usa.gov/xnBuF; *see also* 73 Fed. Reg. 2245, 2247 (Jan. 14, 2008) (providing for disclosure in a court proceeding provided that "the use of such records . . . is deemed by the Agency to be relevant and necessary to the litigation" and that "in each case it has been determined that the disclosure is compatible with the purpose for which the records were collected"), *available at* https://go.usa.gov/xnBuu.  Even if public disclosure of the personal identifiers of individual consumers could be considered relevant and necessary to the litigation, as well as compatible with the purpose for which this information was collected, given the potential for liability Defendants would prefer the greater certainty of a court order so that the issue is free from doubt.

14

enter the attached proposed protective order.[15]

Dated: November 20, 2017

Respectfully submitted,

Of counsel:

HEATHER FLICK
Acting General Counsel
Office of General Counsel
U.S. Dep't of Health & Human Services

REBECCA K. WOOD
Chief Counsel
Food and Drug Administration
Associate General Counsel
Food and Drug Division

PERHAM GORJI
Deputy Chief Counsel for Litigation

WENDY S. VICENTE
Senior Counsel
Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
White Oak 31, Room 4562
Silver Spring, MD 20993-0002

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOEL McELVAIN
Assistant Director

/s/ *Eric Beckenhauer*
ERIC B. BECKENHAUER
Trial Attorney
U.S. Department of Justice
Civil Division, Fed'l Programs Branch
20 Massachusetts Ave. NW
Washington, DC 20530
(202) 514-3338
(202) 616-8470 (fax)
eric.beckenhauer@usdoj.gov

*Counsel for Defendants*

---

[15] In the conclusion of its brief, Plaintiff alludes in passing to the possibility of future discovery requests based on an FDA policy announcement that post-dates the deeming rule, but states that it must first have the "full record" before it can "frame any potential discovery requests." Pl.'s Br. 16. But as Plaintiff stipulated long ago, because "this case is governed by the Administrative Procedure Act," it should be "resolved on the basis of the administrative record compiled by the agency," and is therefore "exempt from Fed. R. Civ. P. 26's ordinary requirement to confer and develop a proposed discovery plan. *See* Fed. R. Civ. P. 26(a)(1)(B)(i) (exempting 'an action for review on an administrative record' from initial disclosure obligations); Fed. R. Civ. P. 26(f)(1)–(3) (exempting such actions from the requirement to confer and develop a proposed discovery plan)." ECF No. 34 at 2. Plaintiff has made no showing that these default rules should not apply, and Defendants do not understand Plaintiff to be arguing at this time that it is entitled to discovery. In any event, discovery about events that post-date the deeming rule would shed no light on this Court's review, which is limited to the record before the agency at the time of its decision. *See, e.g.*, *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985).

15